UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LAMARR GASKIN and EMPERESS
MCDOWELL, *on behalf of Plaintiffs*
*and similarly situated individuals*,

                              Plaintiffs,            **REPORT & RECOMMENDATION**
                                                     **22 CV 5648 (ENV)(LB)**

     -against-

BROOKLYN SUYA CORP.,

                              Defendant.
--------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiffs Lamarr Gaskin ("Gaskin") and Empress McDowell ("McDowell") bring this civil action against defendant Brooklyn Suya Corp. ("defendant"), alleging that defendant violated their rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et. seq. ("FLSA") and the New York Labor Law, Art. 6, §§ 190-99, and Art. 19, §§ 650-65 (collectively "NYLL"). Despite proper service of the summons and complaint, ECF No. 5, defendant failed to plead or otherwise defend this action.  Plaintiffs now move for a default judgment against defendant pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  The Honorable Eric Vitaliano referred plaintiffs' motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).  For the reasons set forth below, it is respectfully recommended that plaintiffs' motion should be granted in part and denied in part.

## BACKGROUND[1]

       After thoroughly reviewing plaintiffs' complaint, the Court is left wondering: what were plaintiffs' jobs and what is defendant's business? Expecting answers to these questions is not too

---

[1] The facts are drawn from the uncontested allegations in plaintiff's complaint and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F. 3d 105, 108 (2d Cir. 1997) (deeming well-pleaded allegations in complaint admitted on motion for a default judgment).

much to ask in an action to recover unpaid wages. Nowhere in plaintiffs' complaint—or the instant motion—does it state what plaintiffs' jobs were or what defendant's business is. The closest we get to an answer is in paragraph 39 of the complaint, under the "collective action allegations," where plaintiffs allege that the "collective class consists of . . . food service employees." ECF No. 1 ["Compl."] ¶ 39. Nonetheless, the Court considers what is presented.

The complaint alleges that defendant "is a domestic business corporation, organized and existing under the laws of the State of New York, with a place of business located at 717 Franklin Avenue, Brooklyn, NY, 11238." Id. ¶ 7. Plaintiff Gaskin worked for defendant from March 1, 2022 through June 10, 2022. Id. ¶¶ 12-13. Throughout his employment, Gaskin worked six days per week, Monday through Saturday. Id. ¶ 14. Some of those days, Gaskin worked a 12.5 hour "full shift" from 10:00 a.m. to 10:30 p.m., while on other days he worked a six hour "half-shift" from 10:30 a.m. to 4:30 p.m. Id. ¶¶ 15-17. Gaskin was paid at a flat rate of $130 per full shift and $80 per half shift. Id. ¶ 18.

McDowell worked for defendant from February 14, 2022 through June 16, 2022. Id. ¶¶ 19-20. Throughout her employment, McDowell worked five days per week, between Monday and Saturday. Id. ¶ 21. Three of the five days McDowell worked a 12.5 hour "full shift" from 10:00 a.m. to 10:30 p.m., and two of the five days she worked a six hour "half-shift" from 10:30 a.m. to 4:30 p.m. Id. ¶¶ 22-24. As with Gaskin, defendant paid McDowell at a flat rate of $130 per full shift and $80 per half shift. Id. ¶ 25.

Plaintiffs allege that defendant failed to pay them the minimum wage and overtime compensation, id. ¶¶ 29-30, and to provide them with proper wage statements and notices. Id. ¶¶ 80, 85. Plaintiffs also allege that Rilwan Ojidan, defendant's part-owner, unlawfully shared in their tip pool. Id. ¶ 69.

## PROCEDURAL HISTORY

Plaintiffs commenced this action against Brooklyn Suya Corp. on September 21, 2022. See Compl. Summons were returned executed on defendant on October 17, 2022. ECF No. 5. After defendant failed to respond to the complaint, plaintiffs requested and the Clerk of Court entered a certificate of default. ECF Nos. 6, 8. Plaintiffs now move for a default judgment.[2] ECF No. 8. Plaintiffs' motion includes plaintiffs' counsel's declaration, ECF No. 8-1, ["Spasojevich Decl."], plaintiffs' declarations, ECF No. 8-5 ["Gaskin Decl."]; ECF No. 8-7 ["McDowell Decl."], and plaintiffs' memorandum of law, ECF No. 8 ["Pls' Mem."]. The motion was referred to me.

## DISCUSSION

### I.   Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993).  On a motion for default judgment, the Court "deems all the well-pleaded

---

[2] Plaintiffs did not file proof that the motion was mailed to defendant's last known address in accordance with Local Civil Rule 55.2(c). Order dated April 3, 2023 (internal quotation marks omitted). The Court extended plaintiffs' deadline to comply with the rules, and plaintiffs filed the required affidavit on April 19, 2023. ECF No. 10.

allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). In determining whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In making this determination, "the court is limited to the non-conclusory, factual allegations in the complaint." Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 78 (E.D.N.Y. 2020) (quotation and citation omitted). The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## II.     Liability

The FLSA provides that:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). "To succeed on a[] FLSA overtime claim, plaintiff must show that: (1) he was an employee who was eligible for overtime (not exempt from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated."[3] Hosking v. New World Mortg., Inc., 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009) (citation omitted).

---

[3] The FLSA contains several exemptions from its overtime requirement, but "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974).

"The FLSA specifically applies only to employees: (1) who are personally engaged in interstate commerce or in the production of goods for interstate commerce or (2) who are employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." Newman v. W. Bar & Lounge, Inc., No. 20-CV-1141, 2021 WL 2401176, at *3 (E.D.N.Y. June 11, 2021) (citing 29 U.S.C. § 206(a), (b)). "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively." Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96 (2d Cir. 2009). For the purposes of enterprise coverage, a business is an "enterprise engaged in commerce or in the production of goods for commerce" when it (1) has employees who produce or work on goods that have moved in commerce, and (2) has gross annual sales of $500,000 or more. 29 U.S.C. § 203(s)(1). Plaintiffs' complaint alleges that defendant is an "'enterprise engaged in commerce' within the meaning of the FLSA." Compl. ¶ 8.

In addition to the FLSA, plaintiffs also seek relief under the NYLL. With regard to state overtime wage claims, "the relevant portions of [the NYLL] do not diverge from the requirements of the FLSA," and thus the Court may analyze plaintiff's FLSA and NYLL claims in tandem. Hosking, 602 F. Supp. 2d at 447 (internal quotation marks, alteration, and citation omitted).

Here, plaintiffs establish that defendant is an employer liable under the FLSA—albeit by the skin of their teeth due to their conclusory pleading.[4] Plaintiffs allege that defendant is

---

[4] It is not difficult to plausibly allege that a defendant is an enterprise engaged in commerce and therefore covered by the FLSA, yet plaintiffs nearly fail to do so. Courts have found that conclusory allegations regarding the defendant's gross sales and relationship to interstate commerce are sufficient to establish enterprise coverage where the plaintiff alleges that the defendant is a restaurant. See Santos v. Cancun & Cancun Corp, No. 21-CV-192, 2022 WL 1003812, at *4 (E.D.N.Y. Feb. 17, 2022) (finding the "somewhat conclusory" allegation that defendants "engaged in interstate commerce and/or the production of goods for commerce" is "sufficient to infer that the FLSA applies to Defendants via enterprise coverage" when combined with the allegation that defendant owned and operated a Mexican restaurant); Vilchis v. Seoul Sisters, Inc., No. 15-CV-6339, 2016 WL 6106478, at *3 (E.D.N.Y. Sept. 15, 2016), report and recommendation adopted, 2016 WL 6102342 (E.D.N.Y. Oct. 18, 2016) ("[C]ourts have

involved in interstate commerce, compl. ¶ 8, and had gross revenue exceeding $500,000, id. ¶ 44, that they were employed by defendant., id. ¶¶ 12-13, 19-20, and that they were not compensated for hours worked in excess of forty hours per week pursuant to the FLSA or the NYLL. Id. ¶¶ 14-18, 21-25, 47; see also New York Lab. Law § 651(5) (defining "employee"). These allegations, accepted as true, establish defendant's liability under the FLSA and the NYLL. See 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

### III. Damages

It is well established that a default is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (quotation and citation omitted). A plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantra, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). "Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (citations omitted).

"Ordinarily, an employee seeking to recover unpaid minimum wages or overtime under FLSA 'has the burden of proving that he performed work for which he was not properly

---

found [conclusory] allegations regarding a restaurant sufficient to satisfy the interstate commerce requirement.") (emphasis added). The reason is straightforward: "it would defy logic to assume that none of the food, drinks, or materials served or used in [a] restaurant originated out of state." Cabrera v. Canela, 412 F. Supp. 3d 167, 174 (2019).

Plaintiffs make the conclusory assertion that defendant "was, and continues to be, an 'enterprise engaged in commerce' within the meaning of the FLSA." Compl. ¶ 8. But this simply tracks the language of the statute. Plaintiffs are ultimately saved by the description of their proposed collective action, which consists, in relevant part, of similarly situated "food service employees who worked for [d]efendant[]. . . ." Compl. ¶ 39. This description, combined with the allegation that plaintiffs received tips, allows the Court to infer that defendant is some kind of food related business for the purposes of establishing FLSA liability, and therefore that it engaged in interstate commerce. In the future, the Court will not accept such conclusory allegations from plaintiffs' counsel, particularly when counsel could have easily alleged the nature of plaintiffs' jobs and defendant's business.

compensated.'" Moon v. Kwon, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). "A plaintiff can meet this burden by relying on recollection alone . . .  where the employer has defaulted . . . ." Santillan v. Henao, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) (quotation, citation, and alteration omitted); Maldonado v. La Nueva Rampa, Inc., No. 10-CV-8195, 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) ("An affidavit that sets forth the number of hours worked is sufficient.").

Here, plaintiffs submit sworn declarations, ECF Nos. 8-5, 8-7, that they worked for defendant between Monday and Saturday. Gaskin Decl. ¶ 6; McDowell Decl. ¶ 6. Four of the six days Gaskin worked a full shift (10:00 a.m. to 10:30 p.m.), and two of the six days he worked a half shift (10:30 a.m. to 4:30 p.m.). Gaskin Decl. ¶¶ 7-8. McDowell worked three full shifts and two half shifts per week. McDowell Decl. ¶¶ 7-8. Both were paid $130 per full shift and $80 per half shift. Gaskin Decl. ¶ 9; McDowell Decl. ¶ 9. Accordingly, the Court relies on plaintiffs' declarations to determine damages.[5]

### A.  Unpaid Wages and Overtime

Plaintiffs allege that defendant failed to pay them the minimum wage and overtime under the FLSA and the NYLL. Compl. ¶¶ 47, 58. An employer is required to pay its employees at

---

[5] There are inconsistencies in plaintiffs' damages calculation. To calculate each plaintiffs' baseline unpaid wages, counsel determined the total amount of unpaid compensation owed per week and multiplied that sum by the number of weeks each plaintiff was employed by defendant. The calculation for plaintiff McDowell annexed to plaintiffs' motion is based on twenty weeks of work, starting the week of January 31, 2022. ECF No. 8-8. However, plaintiff's own affidavit states she began working for defendant two weeks later, on February 14, 2022. McDowell Decl. ¶ 3. The Court's damages calculation therefore reflects McDowell's declaration, which states she worked 18 weeks for defendant.

Second, plaintiffs' counsel estimates weekly damages by assuming Gaskin worked six days per work week and plaintiff McDowell five days per work week. Plaintiffs' work week ran from Monday to Saturday. However, counsel did not apparently look at a calendar. Plaintiff Gaskin was hired on March 1, 2022—a Tuesday—meaning he could work, at most, five (not six) shifts that week. Similarly, plaintiff Gaskin's last day of work was June 10, 2022—a Friday, so he could work, at most, five shifts his final week. Plaintiff McDowell's last day of employment was June 16, 2022, a Thursday, and therefore she could only work four (not five) shifts in her last week. The Court has calculated McDowell's damages based on the inference that she worked three full shifts and one half-shift between June 13, 2022 and June 16, 2022. Similarly, the Court adjusted Gaskin's damages calculation to reflect that he worked four full shifts and one half shift the weeks of March 1, 2022 and June 6, 2022.

least the minimum wage for every hour worked pursuant to the FLSA and NYLL. 29 U.S.C. §

206; NYLL § 652(1). The FLSA further "mandates … [that] employees get time-and-a-half pay

for 'employment' in excess of 40 hours per workweek." Perry v. City of New York, 8 F.4th 502

(2d Cir. 2023) (citing 29 U.S.C. § 207(a)(1)). Similarly, under New York law, employers must

compensate employees at 1.5 times their regular rate for every hour of work performed after the

first 40 hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

 "In order to calculate the unpaid wages due to plaintiff[s], [the Court] must first

determine [their] regular hourly rate[s]." Cazarez v. Atl. Farm & Food Inc., No. 15-CV-2666,

2017 WL 3701687, at *4 (E.D.N.Y. May 31, 2017), report and recommendation adopted, 2017

WL 3701479 (E.D.N.Y. Aug. 25, 2017). "Under the FLSA, '[t]he regular hourly rate of pay of

an employee is determined by dividing his total remuneration for employment (except statutory

exclusions) in any workweek by the total number of hours actually worked by him in that

workweek for which such compensation was paid.'" Sanchez v. Ms. Wine Shop Inc., 643 F.

Supp. 3d 355, 375 (E.D.N.Y. 2022). The NYLL uses the same method for calculating the regular

rate of pay.[6] Id. (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16).

 "Under both the FLSA and NYLL, once the Court determines the actual number of hours

worked per week and calculates the regular rate based on those hours, the regular rate is then

compared to the statutorily-imposed minimum wage to determine whether the employee has

been underpaid." Villanueva v. 179 Third Ave. Rest Inc., 500 F. Supp. 3d 219, 235 (S.D.N.Y.

2020), report and recommendation adopted, 2021 WL 2139441 (S.D.N.Y. May 26, 2021)

(quotation and citation omitted). "In the event the regular rate falls below the applicable

---

[6] While a NYLL wage order specifically governing the hospitality industry provides a different method for calculating the regular wage of hospitality industry employees, plaintiffs' motion does not cite that wage order. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5. Plaintiffs' conclusory pleadings do not establish to a reasonable certainty that they worked in the hospitality industry and are covered by the wage order for the purposes of calculating their damages.

minimum wage, an employee is entitled to [overtime] compensation at a rate of 1.5 times the applicable minimum wage." Sanchez, 643 F. Supp. 3d at 377 (citation omitted). For the duration of plaintiffs' employment, the federal minimum wage was $7.25. 29 U.S.C. § 206(a)(1)(C). In 2022, the minimum wage for New York City businesses was $15.00 per hour. N.Y. Lab. Law § 652(1)(a). The Court therefore calculates plaintiffs' damages for unpaid wages under the New York Labor Law, which allows for a greater recovery. See Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 316–17 (S.D.N.Y. 2014) ("Under 29 U.S.C. § 218(a), plaintiffs may recover the minimum wage at the rate set by state or federal law, whichever is greater.").

Here, plaintiffs were paid $130 for each full shift of 12.5 hours and $80 for each half shift of six hours. Based on the number of shifts worked per week, the amount paid per shift, and the hours per shift, the Court calculates plaintiffs' regular wage rates as follows:[7]

**Plaintiff Gaskin – Regular Rate**

| Week of Employment | Shifts Per Week | Hours Worked Per Week | Weekly Pay | Regular Rate |
|---|---|---|---|---|
| Week 1 3/1/2022 – 3/6/2022 | 4 Full; 1 Half | 56 | 600 | $10.71 |
| Weeks 2-14 3/7/2022 – 6/5/2022 | 4 Full; 2 Half | 62 | 680 | $10.97 |
| Week 15 6/6/2022 – 6/10/2022 | 4 Full; 1 Half | 56 | 600 | $10.71 |

[7] Regular Rate = ((Number of Weekly Full Shifts *130)+(Number of Weekly Half Shifts*80))/Number of Hours Worked

Plaintiffs' counsel calculates an hourly rate of $11.11 per hour for McDowell and $10.97 per hour for Gaskin. Spasojevich Decl. ¶¶ 22, 58. While generally correct, this calculation assumes that plaintiffs received consistent weekly payments throughout their employment. But plaintiffs were paid variable amounts depending on the type of shift worked and, as discussed in footnote five, plaintiffs could not have worked the same number of shifts each and every week of their employment. Their weekly pay, hours, and regular rate therefore varied, which the Court takes into account.

The Court notes that it calculates plaintiffs' regular rate by dividing their weekly pay by the total hours worked that week. See Hernandez v. Delta Deli Market Inc., No. 18-CV-00375, 2019 WL 643735, at *6 (E.D.N.Y. Feb. 12, 2019), adopted by, Case No. 18-CV-00375, Electronic Order dated Mar. 4, 2019 (calculating plaintiff's hourly rate by dividing his weekly pay by the total number of hours he worked that week); Pichardo v. El Mismo Rincon Latino Corp., No. 17-CV-7439, 2018 WL 4101844, at *4 (E.D.N.Y. Aug. 7, 2018), adopted by, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018) (same) (E.D.N.Y. Sept. 30, 2017) (same). This is the method plaintiffs used in their motion to calculate their damages, notwithstanding counsel's own argument in his memorandum of law advancing a different method under FLSA.

### Plaintiff McDowell – Regular Rate

| Week of Employment | Shifts Per Week | Hours Worked Per Week | Weekly Pay | Regular Rate |
|---|---|---|---|---|
| Weeks 1-17<br>2/14/2022-6/12/2022 | 3 Full; 2 Half | 49.50 | 550 | $11.11 |
| Week 18<br>6/13/2022 -6/16/2022 | 3 Full; 1 Half | 43.50 | 470 | $10.80 |

As plaintiffs' hourly compensation was less than New York's minimum wage, the Court calculates plaintiffs' damages using the state's $15 per hour minimum wage as the regular rate and an overtime rate of $22.50 per hour. The Court calculates plaintiffs' damages for unpaid wages and overtime as follows:

### Plaintiff Gaskin – Unpaid Wages (Per Week)

| Week of Employment | Hours | Actual Weekly Pay | Regular Wages Owed | Overtime Owed | Unpaid Wages |
|---|---|---|---|---|---|
| Week 1<br>3/1/2022 – 3/6/2022 | 56 | $600 | $600 | $360 | $360 |
| Weeks 2-14<br>3/7/2022 – 6/5/2022 | 62 | $680 | $600 | $495 | $415 |
| Week 15<br>6/6/2022 – 6/10/2022 | 56 | $600 | $600 | $360 | $360 |
| Total: | | | | | **$6115** |

### Plaintiff McDowell – Unpaid Wages (Per Week)

| Week of Employment | Hours | Actual Weekly Pay | Regular Wages Owed | Overtime Owed | Unpaid Wages |
|---|---|---|---|---|---|
| Weeks 1-17<br>2/14/2022-6/12/2022 | 49.50 | $550 | $600 | $213.75 | $263.75 |
| Week 18<br>6/13/2022 -6/16/2022 | 43.50 | $470 | $600 | $208.75 | $208.75 |
| Total: | | | | | **$4692.50** |

### B.  Unpaid Tips

Plaintiffs also allege that defendant violated § 196-d of the NYLL through unlawful tip pooling because Rilwan Ojidan, a part-owner of defendant, participated in the tip pool. Compl. ¶ 76; Pls' Mem. at 12 ("Defendant, pursuant to its policies and practices, allowed part-owner,

RILWAN OJIDAN, to take shares of a tip pool meant for employees"). Plaintiffs seek recovery of their respective portions of customer tips that went to Ojidan. Spasojevich Decl. ¶¶ 41, 77; Section 196-d provides, in relevant part, that:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. [. . . ] Nothing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or similar employee.

New York Lab. Law § 196-d.

"Section 196-d of the NYLL prohibits an employer or agents from demanding or accepting any part of the gratuities received by an employee." Kuan v. Notoriety Grp. LLC, No. 22-CV-1583, 2023 WL 3937317, at *8 (S.D.N.Y. May 22, 2023), report and recommendation adopted, 2023 WL 3936749 (S.D.N.Y. June 9, 2023). "[T]he plain language of Section 196–d does not grant any employee a right to participate in tip pools or to receive the proceeds therefrom but merely defines who is eligible to participate in tip pools—waiters, busboys, and other similar employees—and who is not—employers, their agents, and any other person." Hoxhaj v. Michael Cetta, Inc., No. 21-CV-6486, 2023 WL 3455444, at *6 (S.D.N.Y. May 15, 2023) (internal quotation and citation omitted). An employee with "meaningful authority or control over subordinates can no longer be considered similar to waiters and busboys within the meaning of section 196-d and, consequently, is not eligible to participate in a tip pool." Barenboim v. Starbucks Corp., 21 N.Y.3d 460, 473 (2013). "Eligible employees must perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.14.

Therefore, to recover withheld tips under § 196-d, plaintiffs must not only demonstrate that defendant created a tip pool that includes ineligible individuals, but that the plaintiffs are, themselves, eligible to participate. That is, a plaintiff must allege that he is a waiter, busboy, or similar employee. See Barenboim, 21 N.Y.3d at 473. Absent allegations about a plaintiff's job responsibilities, courts risk awarding withheld tips to individuals who are statutorily prohibited from sharing in tip pools, thereby effectuating the very wrong § 196-d is designed to remedy.

Here, plaintiffs allege that Ojidan was included in the tip pool pursuant to defendant's "policies and practices...." Compl ¶ 69. Ojidan "disciplined subordinates, had authority to hire and/or fire employees, and created work schedules." Id. ¶ 72. Clearly, Ojidan was ineligible to participate in the tip pool. Barenboim, 21 N.Y.3d at 473 (holding an employee is no longer "similar" to "general wait staff" when he or she has "meaningful or significant authority or control over subordinates").

However, plaintiffs do not allege any facts demonstrating their own eligibility to participate in the tip pool. Plaintiffs' statement that their collective action is comprised of "similarly situated . . . food service employees[,]" compl. ¶ 39, does not establish that "personal service to patrons [was] a principal or regular part" of plaintiffs' employment. Barenboim, 21 N.Y.3d at 473. Even if "food service employees" are categorically eligible to participate in a tip pool, plaintiffs' assertion that they were "similarly situated" to such employees is a legal conclusion that merely restates the FLSA statutory language. Because plaintiffs fail to allege what they did as employees of defendant, the Court cannot infer that plaintiffs were waiters, busboys, or similar employees within the meaning of § 196-d. Therefore, the Court should deny plaintiffs' motion seeking unpaid tips.

### C. Liquidated Damages

Plaintiffs seek liquidated damages for the entire period of their employment under the NYLL or FLSA. Pls' Mem. at 16-17. Liquidated damages under the NYLL are calculated as 100% of the total amount of underpayments due to the employee. New York Lab. Law § 663(1). "A plaintiff may recover liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery." Sanchez, 643 F. Supp. 3d at 374; Chowdhury v. Hamza Express Food Corp., 666 Fed. App'x 59, 60–61 (2d Cir. 2016) (summary order). As discussed above, plaintiffs' damages are greater under the NYLL than under the FLSA and therefore, plaintiff Gaskin should be awarded **$6115.00** and plaintiff McDowell should be awarded $**4692.50** in liquidated damages pursuant to the NYLL.

### D. Statutory Damages

#### i. Standing

Plaintiffs allege that defendant did not provide wage notices or wage statements as required under the Wage Theft Prevention Act ("WTPA"), codified as NYLL § 195(1) and NYLL § 195(3). Gaskin Decl. ¶¶ 14-15; McDowell Decl. ¶¶ 14-15.

Plaintiffs must demonstrate standing to pursue these claims in federal court. To show standing, plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan v. Defenders Of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Town of Chester, N.Y. v. Laroe Ests., Inc., 581 U.S. 433, 439 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."). An injury in fact consists of "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not

13

conjectural or hypothetical." <u>Lujan</u>, 504 U.S. at 560 (internal quotation marks and citations omitted). Concrete harms include any "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." <u>TransUnion LLC v. Ramirez</u>, 141 S. Ct. 2190, 2206 (2021).

"Article III standing requires a concrete injury even in the context of a statutory violation." <u>Id.</u> at 2205 (quotation and citation omitted). While the denial of statutorily required information to a plaintiff does not inherently constitute a concrete harm, "'downstream consequences' from failing to receive the required information" may satisfy the injury-in-fact requirement <u>Id.</u> at 2214 (citation omitted). In keeping with these principles, the Second Circuit recently dismissed a suit for statutory damages arising from a bank's violation of New York statutes requiring the recording of mortgage satisfactions shortly after payment in full. <u>Maddox v. Bank of New York Mellon Tr. Co., N.A.</u>, 19 F.4th 58, 61 (2d Cir. 2021). The Second Circuit held that plaintiffs failed to allege a concrete injury because the potential harms posed by the bank's statutory violation never materialized, nor did the risk of harm result in a separate concrete injury. <u>Id.</u> at 65-66.

In the wake of <u>TransUnion</u> and <u>Maddox</u>, "courts in the Second Circuit have reached different conclusions when weighing the sufficiency of a plaintiff's allegations to show Article III standing to pursue NYLL wage notice and wage statement claims in federal court." <u>Guthrie v. Rainbow Fencing Inc.</u>, No. 21-CV-5929, 2023 WL 2206568, at *5 (E.D.N.Y. Feb. 24, 2023) (collecting cases).  Numerous courts have held "that a plaintiff lacks standing to recover for a wage notice or statement violation . . . when the plaintiff pleads nothing more than the statutory violation and a demand for damages." <u>Montalvo v. Paul Bar & Restaurant Corp.</u>, 22-CV-1423, 2023 WL 5928361, at *3 (S.D.N.Y. Sept. 12, 2023); <u>Sevilla v. House of Salads One LLC</u>, No.

20-CV-6072, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022); Metcalf v. TransPerfect Translations Int'l, Inc., 632 F. Supp. 3d 319, 340 (S.D.N.Y. 2022) (dismissing wage statement claim where plaintiffs did not allege that they "read the wage statements or relied on them in any way, or that the wage statements caused Plaintiffs confusion or distress"); Sanchez, 643 F. Supp. 3d at 373 (finding allegation that "Defendants failed to provide Plaintiff with wage statements, upon each payment of his wages, as required by NYLL § 195(3)" to be insufficient to show standing). These cases do not foreclose the possibility of litigating wage statement and notice claims in federal court, and several explicitly recognize that downstream consequences stemming from an employer's statutory violations can confer standing. Sanchez, 643 F. Supp. 3d at 373 n.5; Metcalf, 632 F. Supp. 3d at 341.

Courts have held that a plaintiff has standing to bring wage statement and notice claims when the defendant's failure to provide the statutorily-required wage information is linked to the defendant denying plaintiff his or her lawful wage.[8] Metcalf v. TransPerfect Translations Int'l, Inc., No. 19-CV-10104, 2022 WL 19300779, at *4 (S.D.N.Y. Nov. 15, 2022), report and recommendation adopted, 2023 WL 2674743 (S.D.N.Y. Mar. 29, 2023) (finding that "specific allegations that the inaccurate wage notices and wage statements resulted in . . . being underpaid for nearly nine months" showed standing); Mateer v. Peloton Interactive, Inc., No. 22-CV-740, 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) (allegation that defendant's statutory violation "resulted in the underpayment of wages" demonstrates "a concrete harm sufficient for purposes of Article III standing"). In these cases, the statutory violation is not alleged to give rise solely to an informational injury, but rather is tied to the concrete monetary harm of underpayment.  And as one court recently held, the denial of wage information also gives rise to

---

[8] One Court recently held that allegations as to "downstream injuries . . . are not necessary to supply standing . . . ." Bueno v. Buzinover, No. 22-CV-2216, 2023 WL 2387113, at *2 (S.D.N.Y. Mar. 7, 2023).

the "distinct injury" that is the "[t]he delay in compensation that results when someone lacks the full information needed to advocate for appropriate wages. . . ." <u>Lipstein v. 20X Hospitality LLC</u>, No. 22-CV-4812, 2023 WL 6124048, at *10 (S.D.N.Y. Sept. 19, 2023).

      Recognizing that underpayment is unquestionably a concrete injury, some courts have held that the "real barrier to standing" for wage statement and notice claims is "causation—that is, whether [a plaintiff's] alleged underpayment is 'fairly traceable' to the allegedly inaccurate wage statements." <u>Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC</u>, No. 22-CV-6415, 2023 WL 4457911, at *13 (W.D.N.Y. July 11, 2023); <u>see also</u> <u>Quieju v. La Jugueria Inc.</u>, No. 23-CV-264, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023) ("The injury that plaintiff suffered (i.e., defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law."). Under this reasoning, a plaintiff's monetary harm from underpayment of wages "is better traced" to an employer's violation of state and federal minimum wage and overtime law, and the only interest harmed by an employee being denied information contained in the wage notices and statements is his or her interest in bringing litigation, which is not cognizable. <u>Jackson v. ProAmpac LLC</u>, No. 22-CV-03120, 2023 WL 6215324, at *4 (S.D.N.Y. Sept. 25, 2023) (citing <u>Harty v. West Point Realty, Inc.</u>, 28 F.4th 435, 444 (2d Cir. 2022)).

      Bottom line, the issue of standing for wage statement and notice claims is far from settled. Again, though thin, as plaintiffs plausibly allege that defendant's failure to provide plaintiffs with wage information is linked to defendant's failure to lawfully compensate plaintiffs, plaintiffs can pursue their § 195(1) and § 195(3) claims. Plaintiffs allege that defendant

did not provide wage statements and notices to "disguise the actual number of hours the Plaintiffs . . . worked and to avoid paying at the minimum wage rate and an overtime wage . . . ." Compl. ¶ 34. While this allegation—like most of plaintiffs' complaint—would greatly benefit from additional detail, being paid less than what one is lawfully owed constitutes a concrete harm. And as discussed in <u>Lipstein</u>, the "delay in compensation" an underpaid employee experiences when denied wage information that if supplied as the law requires, may have prevented or shortened the period of underpayment, is an injury "distinct from any underpayment itself." 2023 WL 6124048, at *10; <u>see also</u> <u>Levy v. Endeavor Air Inc.</u>, 638 F. Supp. 3d 324, 329 (E.D.N.Y. 2022) (recognizing that "the time value of money is real and concrete").

The connection between the unlawful payment of wages and the statutorily required wage information is illustrated by the legislative purpose behind the provisions: "wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wages they earned." <u>Cuchimaque v. A. Ochoa Concrete Corp.</u>, No. 22-CV-6136, 2023 WL 5152336, at *6 (E.D.N.Y. July 18, 2023), <u>report and recommendation adopted</u>, Order dated Aug. 23, 2023 (citation omitted). "[T]he WTPA was enacted to further protect an employee's concrete interest in being paid what he or she is owed under the NYLL." <u>Bueno</u>, 2023 WL 2387113, at * 3 (citing <u>Imbarrato v. Banta Mgmt. Servs., Inc.</u>, No. 18-CV-5422, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020).[9] While the legislature cannot create an Article III injury with the stroke of a pen, <u>Maddox</u>, 19 F.4th at 64, it can trace the link between a statutory requirement and a concrete harm that arises as a consequence of violating that statute. It is plausible that defendant refused to provide wage statements and notices to make it more difficult for plaintiffs to identify defendant's unlawful conduct. This is sufficient because, "at the

---

[9] Although the Court that decided <u>Imbarrato</u> recently walked back its holding, <u>see</u> <u>Jackson</u>, 2023 WL 6215324, the analysis of the statutory purpose of the WTPA remains instructive.

pleading stage, the fairly traceable standard is not equivalent to a requirement of tort causation and . . . for purposes of satisfying Article III's causation requirement, [courts] are concerned with something *less than the concept of proximate cause*." Rothstein v. UBS AG, 708 F.3d 82, 92 (2d Cir. 2013) (internal quotation and citation omitted) (emphasis in original). The Court therefore finds plaintiffs have alleged a sufficient casual nexus between defendant's statutory violation and a concrete injury.

The cases relied on by other courts holding employees lack standing to bring wage statement and notice claims do not compel a contrary holding. In Harty, the Second Circuit held a wheelchair-bound tester denied legally-required information by defendant about the accessibility of its hotel did not suffer a concrete injury. 28 F.4th at 444. As the tester never visited or intended to visit the hotel, his only connection to the information at issue was the lawsuit. Id. Here, by contrast, plaintiffs' wage information was relevant to them because they were employees denied their lawful pay by defendant. Plaintiffs are not relying on "[a]n asserted informational injury that causes no adverse effects[,]" TransUnion LLC, 141 S. Ct. at 2214 (quotation omitted), nor are plaintiffs arguing that defendant's statutory violations injure them through a "nebulous risk of future harm. . . ." Maddox, 19 F.4th at 65; see also Cuchimaque, 2023 WL 5152336, at *6. ("The wage statement and notice violations alleged here are of a different class of harm than those alleged in TransUnion and Maddox.").  Rather, plaintiffs allege that defendant did not provide wage information required by the WTPA in order to deny them their lawful wages—harms plaintiffs in fact experienced. Plaintiffs therefore have standing to assert wage statement and notice claims.

### ii.  Wage Notices

"The NYLL requires employers to provide annual wage notices to employees hired after April 9, 2011 . . . ." Chichinadze v. BG Bar Inc., 517 F. Supp. 3d 240, 259 (S.D.N.Y. 2021) (citing New York Lab. Law § 195(1)). "After February 27, 2015, employees are entitled to damages of $50.00 per work day, up to $5,000" in statutory damages for violations of this provision. Reyes v. Art Tek Design, Ltd., No. 16-CV-5168, 2018 WL 614980, at *8 (E.D.N.Y. Jan. 11, 2018), adopted by, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018) (citations omitted); see also New York Lab. Law § 198(1-b) (providing a plaintiff may recover "damages of fifty dollars for each **work day** that the violations occurred or continue to occur") (emphasis added). Here, plaintiffs allege that defendant never provided them any wage notice for the duration of their employment. Gaskin Decl. ¶¶ 14-15; McDowell Decl. ¶¶ 14-15. For the reasons discussed in footnote five, McDowell worked, at most, four days her last week and five days per week for the other seventeen weeks she was employed by defendant. Plaintiff Gaskin worked at most five days per week his first and last week, and six days per week for the other thirteen weeks he was employed defendant.

Accordingly, the Court should award plaintiff McDowell **$4450** ($50 x 89 work days) and plaintiff Gaskin **$4400** ($50 x 88 work days) against defendant. See Ramos v. Greenwich Catering Corp., No. 18-CV-04790, 2020 WL 619928, at *9 (S.D.N.Y. Jan. 15, 2020), report and recommendation adopted, 2020 WL 615030 (S.D.N.Y. Feb. 7, 2020) (calculating wage notice and statement damages by number of days worked per week).

### iii.  Wage Statements

New York Labor Law § 195(3) provides that "[e]very employer shall . . . furnish each employee with a statement with every payment of wages[.]" The wage statement must list

"information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." Rojas v. Splendor Landscape Designs Ltd., 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (citation omitted). An employee is entitled to $250 per work day that the violation occurred, up to a maximum of $5,000. See Copper v. Cavalry Staffing, LLC, 132 F. Supp. 3d 460, 467 (E.D.N.Y. 2015) (citing NYLL § 198(1-d)). Plaintiff Gaskin alleges he did not receive any wage statements for the 15 weeks he was employed by defendant, and plaintiff McDowell alleges that she did not receive any wage statements for the 18 weeks she was employed by defendant. Compl. ¶¶ 85-86; Gaskin Decl. ¶¶ 14-15; McDowell Decl. ¶¶ 14-15. Accordingly, the Court should award plaintiff Gaskin and plaintiff McDowell the statutory maximum of **$5,000.00** each against defendant.

### E. Pre-Judgment Interest

Plaintiffs request pre-judgment interest pursuant to the NYLL. Pls' Mem. at 17. The "NYLL permits the award of both liquidated damages and pre-judgment interest." Fermin v. Las Delicias Peruanas Restaurants, Inc, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) (citation omitted). To avoid double recovery, pre-judgment interest is awarded only on the compensatory damages awarded under the NYLL, not on the liquidated damages. Id. at 49 (citing cases). Accordingly, plaintiffs are entitled to pre-judgment interest on their unpaid wages at a rate of 9% per year. N.Y. C.P.L.R. § 5004.  Where, as here, unpaid wages were "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest. Fermin, 93 F. Supp. 3d at 49. Here, it is recommended that prejudgment interest should be awarded to plaintiff

Gaskin from April 20, 2022 until judgment is entered and to plaintiff McDowell from April 16, 2022 until judgment is entered.[10]

Interest is determined by multiplying the state law damages by the interest rate (9%) and the number of years that elapsed between the intermediate date and the date the judgment is entered. See Yu Y. Ho v. Sim Enterprises, Inc., No. 11-CV-2855, 2014 WL 1998237, at **19-20 (S.D.N.Y. May 14, 2014) (explaining prejudgment interest calculation). Here, the daily interest rate for plaintiff Gaskin is $1.51 and for plaintiff McDowell is $1.16.[11]  Accordingly, it is respectfully recommended that the Court should calculate the interest award to plaintiffs by multiplying the daily prejudgment interest rate, $1.51 for plaintiff Gaskin and $1.16 for plaintiff McDowell, by the number of days between April 20, 2022 and April 15, 2022, respectively, and the date judgment is entered.

### F.  Post-Judgment Interest

Plaintiffs request post-judgment interest. "[P]ost-judgment interest is mandatory in any civil case where money damages are recovered." Fermin, 93 F. Supp. 3d at 53 (quotation and citation omitted). "[I]nterest shall be calculated from the date of the entry of judgment at [the federal] rate equal to the weekly average 1–year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a); see Herrera v. Tri-State Kitchen & Bath, Inc., No. 14-CV-1695, 2015 WL 1529653, at *13 (E.D.N.Y. Mar. 31, 2015) (awarding post-judgment interest in a FLSA and NYLL case). Accordingly, I recommend that plaintiffs should be awarded post-judgment interest at the default federal statutory rate.

---

[10] April 20, 2022 and April 16, 2022 are the midpoints of plaintiff Gaskin's and plaintiff McDowell's respective employments.
[11] The daily interest rate is calculated by multiplying the amount of unpaid wages by the per annum interest rate and dividing by the number of days in a year. As to Gaskin: $6115 x .09 = $550.35.  $550.35/ 365 days = $1.51. As to McDowell: 4692.50 x .09 = 442.33. 442.33/365 = $1.16.

### G.  Increase in Judgment

Plaintiffs seek an automatic fifteen percent increase in the amount of damages awarded under the New York Labor Law for damages that remain unpaid after ninety days following issuance of judgment. Pls' Mem at 19. "New York Labor Law provides that '[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.'" Sanchez, 643 F. Supp. 3d at 381 n.12 (quoting NYLL § 198(4)). The Court therefore recommends that plaintiffs be awarded "a fifteen-percent increase in damages under the NYLL, not including post-judgment interest, for any amounts that are not paid within ninety days of judgment or the expiration of time to appeal." Id.; see also Rodriguez v. Solares Corp., No. 16-CV-3922, 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), report and recommendation adopted, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019) (awarding automatic 15% increase in damages awarded under the NYLL to the extent those amounts remain unpaid, if no appeal is pending).

### H.  Attorney's Fees and Costs

The FLSA and the NYLL both allow for an award of "reasonable" attorney's fees. See 29 U.S.C. §216(b); N.Y. Lab. Law § 663(1). "Requests for attorney's fees in this Circuit must be accompanied by contemporaneous time records that show for each attorney, the date, the hours expended, and the nature of the work done." Juarez v. Precision Apparel, Inc., No. 12 CV 2349 (ARR) (VMS), 2013 WL 5210142, at *13 (E.D.N.Y. Aug. 21, 2013) (adopting Report and Recommendation) (internal quotation omitted).

Here, plaintiffs' counsel requests thirty days from entry of any judgment against defendant to file a motion for attorney's fees and costs. Pls. Mem. at 21. The Court recommends granting this request.[12]

## CONCLUSION

It is respectfully recommended that plaintiffs' motion for a default judgment should be granted in part and denied in part. The Court should award plaintiff Gaskin a total of **$21,630** (comprised of $6,115 in unpaid overtime wages, $6,115 in liquidated damages, and $9,400 in statutory damages). The Court should also award plaintiff Gaskin pre-judgment interest at a rate of $1.51 per day between April 20, 2022 through the entry of judgment. The Court should award plaintiff McDowell a total of $**18,835** (comprised of $4,692.50 in unpaid wages, $4,692.50 in liquidated damages, and $9,450 in statutory damages). The Court should also award plaintiff McDowell pre-judgment interest at a rate of $1.16 per day between April 16, 2022 through the entry of judgment. Plaintiffs' request for unpaid tips should be denied.

Furthermore, the Court should award plaintiffs post-judgment interest at the default federal statutory rate on all sums awarded from the date the Clerk of the Court enters judgment until the date of payment. Plaintiffs' counsel should be permitted to file a motion for attorney's fees and costs within thirty days from the date the Court rules on this Report and Recommendation. Plaintiffs are hereby ordered to serve a copy of this Report upon defendant at its last known addresses and to file proof of service with the Court forthwith.

---

[12] Counsel's request for fees should be tempered by this Report's generosity regarding the conclusory pleadings. The request for attorney's fees must be supported by contemporaneous time records that describe with specificity the nature of the work done, the hours expended, the attorney's hourly rate, and the dates on which the work was performed for each attorney seeking fees. Fermin, 93 F. Supp. 3d 19, 51–52. Furthermore, a request for costs must be supported by adequate, itemized documentation. Kindle v. Dejana, 308 F. Supp. 3d 698, 705 (E.D.N.Y. 2018).

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: October 26, 2023
          Brooklyn, New York